524 So.2d 160 (1988)
STATE of Louisiana
v.
Phil SEIFERT, O. Richard Castleman, and Lieutenant John Schluter.
Nos. 88-K 0114, 88-K 0130.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Harry F. Connick, Dist. Atty., Dolores V.M. Smith, Asst. Dist. Atty., New Orleans, for the State.
Ronald Causey, Baton Rouge, for Paul Seifert.
Birch McDonough, New Orleans, for O. Richard Castleman.
Ralph Capitelli, New Orleans, for Lieutenant John Schluter.
Before SCHOTT, GARRISON and CIACCIO, JJ.
CIACCIO, Judge.
From the district court's rulings on defendants' motions for discovery and bills of particulars, one defendant and the state have applied to this court for review. No party has filed an opposition. We have consolidated the two applications.
*161 By grand jury indictment the State charged that the three defendants "did monopolize, attempted to monopolize, and combined with each other to monopolize the filming trade." See La.R.S. 51:123. Relator Richard Castleman filed a motion for a bill of particulars, La.C.Cr.P. Art. 484, requesting six particular categories of information. In his application relator complains by number of the answers received to items 1, 2, 4, 5, and 6. In substance, however, the application makes numbers 5 and 6 identical, corresponding to number 6 of his original motion. Nevertheless, the district court minute entry indicates that the court ordered the state to supply information on the "specific acts" requested by relator's item number 2, and that relator was satisfied with the state's answers as to items 3, 4, and 5. According to the minute entry the only answers with which relator was unsatisfied and which the court ruled to be good and sufficient were the answers to items 1 and 6. No objections to the court's rulings are noted by the minute entry. Further, relator's application does not contain an argument addressing item 6, but argues only as to item 1 requesting a definition of "filming trade." We will, therefore, address only the request for a definition of "filming trade," even though no objection to the district court ruling on this issue is noted in the minute entry.
Our discussion of relator Castleman's complaint will be combined with our discussion of the State's, as relator, first complaint: the district court ordered the State to define trade or commerce. The State's second complaint is that the district court ordered it to provide defense counsel with information on whether the grand jury or any of its members conducted investigative activities beyond the normal review of evidence, such as interviewing witnesses by telephone, either inside or outside the grand jury session. The State's third complaint is that the district court ordered it to furnish the court, for in camera inspection, the "rap sheets" of any civilian witness. The minute entry notes the State's objection to each of the court's rulings about which it now complains.
The function of a bill of particulars is to inform a defendant more specifically of the nature and cause of the charge against him. La.C.Cr.P. Art. 484; State v. Ford, 349 So.2d 300 (La.1977). Relator Castleman's desire for a definition of "filming trade" stems from his contention that the film industry encompasses many different jobs and activities, and a definition of "filming trade" would "allow defendant to direct and focus his attention on those areas wherein he may have committed suspect acts." While the state could have contended that defendant was indicted for monopolizing, etc., all aspects of the filming trade, the state has provided relator with the following statement of specific acts alleged to have been committed by relator in violation of La.R.S. 51:123:
DEFENDANT O. RICHARD CASTLEMAN: did exclude members of the New Orleans community who were not listed in his files from entering an area where hiring was being conducted for a film.
Denied film companies other means than through his agency for casting extras for their film.
Used taxpayers property for the benefit and furtherance of one talent agency to the exclusion of all others.
Used one casting agenct to handle payments of extras he furnished for a film to the exclusion of all others.
Received and acted upon information given to him by a co-defendant that was denied others.
We find that this statement of specific acts informs relator of the nature and cause of the charge against him, and satisfied his request to be allowed to "direct and focus his attention." While the statement of specific acts does not directly attempt to define "filming trade," by serving the function of a bill of particulars and providing relator with what he wanted to know it negates any legitimate purpose for a definition. Relator has received a good and sufficient bill of particulars.
The State complains that the court's order that it define trade or commerce places it in a "trick bag" by forcing it to choose whether the film industry is trade *162 or commerce. First we note that the indictment does not charge monopolization of the film industry but of the "filming trade." To the extent the State needed to choose between trade or commerce, it apparently has chosen trade. Its "trick bag" argument relies on an erroneous premise. Second, however, trade or commerce is defined by statute:
Section 121. Commerce defined
Commerce means trade or commerce within this State.
La.R.S. 51:121. For the purposes of Title 51, Part IV, Monopolies, of the Louisiana Revised Statutes trade and commerce are interchangeable; they need not be defined and by definition distinguished. Third, to the extent some definition was seen as promoting the requirement of informing defendants of the nature and cause of the charge against them, all three defendants were provided with a statement of specific acts similar in nature to the statement as to defendant Castleman quoted above. With the statements of specific acts all three defendants have received good and sufficient bills of particulars. We reverse the order of the district court that the State define trade or commerce.
Next, the State complains about the court's order that it provide information on whether the grand jury or any of its members conducted investigative activities beyond the normal review of evidence, such as interviewing witnesses by telephone, either inside or outside the grand jury session. The minute entry does not indicate that defense counsel provided any ground for requesting the information. In requiring the State to furnish the information, the court relied on La.C.Cr.P. Art. 442. We find the Court's order erroneous.
La.C.Cr.P. Art. 434 provides,
Art. 434. Secrecy of grand jury meetings; procedures for crimes in other parishes
A. Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them.

* * * * * *
While defense counsel appears to request that the State "reveal statutory irregularities in grand jury proceedings," we find that irregularities concerning the receiving of evidence are not subject to disclosure. La.C.Cr.P. Art. 442 provides,
Art. 442. Evidence to be received by grand jury
A grand jury shall hear all evidence presented by the district attorney. It may hear evidence for the defendant, but is under no duty to do so.
When the grand jury has reason to believe that other available evidence will explain the charge, it should order the evidence produced.
A grand jury should receive only legal evidence and such as is given by witnesses produced, or furnished by documents and other physical evidence. However, no indictment shall be quashed or conviction reversed on the ground that the indictment was based, in whole or in part, on illegal evidence, or on the ground that the grand jury has violated a provision of this article.
The Official Revision Comment to Art. 442 makes the following observations:

Official Revision Comment
(a) The rule of the 1928 Code of Criminal Procedure regarding evidence receivable by a grand jury, appeared in the form of a definite limitation. Former Art. 213 stated that the grand jury "can receive no other than legal evidence." (Emphasis supplied.) However, former Art. 213 was construed by the Louisiana Supreme Court as no more than a direction to the grand jury that it must limit itself in its investigations to the consideration of legal evidence. It could not be employed as authority for a review of the legality *163 of the evidence upon which the indictment was found. State v. Simpson, 216 La. 212, 43 So.2d 585 (1949); see also State v. Britton, 131 La. 877, 60 So. 379 (1913), and State v. Dallao, 187 La. 392, 175 So. 4 (1937). To permit a review of the evidence considered by the grand jury would destroy the veil of secrecy which surrounds the proceedings and testimony presented to the grand jury. [Emphasis ours.] It would also require a complete recordation and transcription of testimony before the grand jury. It is significant that the 1964 Pennsylvania Rules of Criminal Procedure, Rule 208, prohibits the transcription of testimony before the grand jury.
The Louisiana jurisprudence is codified by employing the word "should" in the grand jury directive of the third paragraph. The article also expressly prohibits the challenging of an indictment on the ground that it is based, in whole or in part, on illegal evidence. Similarly, the A.L.I. Code of Criminal Procedure rule that the indictment must be based on sufficient legal evidence provides that no indictment or conviction shall be set aside on the ground that there was not sufficient legal evidence.
Although the court did not order "review of the evidence considered by the grand jury," it did order revelation of the manner in which that evidence was received. We discern no legitimate purpose for disclosure of this information which warrants violating the secrecy of the grand jury proceedings. Accordingly, we reverse the order of the district court requiring the State to reveal the requested information about the grand jury.
In the last order about which the State now complains the court ordered the State to furnish the Court, for in camera inspection, any civilian witness "rap sheets." In State v. Whitlock, 454 So.2d 871, 873 (La.App. 4th Cir.1984), this court reasoned and held as follows:
In his motion for discovery and inspection, defendant requested a computer printout or "rap sheet" and FBI record of the State's chief witness, Ward. The state responded it "has no knowledge of any convictions", which the court ruled was adequate. Subsequently, at the hearing on the motion to suppress and at trial Ward admitted convictions in two other states for destruction of property and for resisting arrest.
Defendant contends that after the State became aware of Ward's record (following the suppression hearing) it should have obtained and produced a rap sheet for impeachment purposes. State v. Harvey, 358 So.2d 1224 (La.1978), after remand 369 So.2d 134 (La.1979).
In Harvey, however, the court did not require the State to procure and produce rap sheets of its witnesses; rather, it required the prosecution to state whether it had such records in its possession and, if so, to furnish them to the defendant or the court in camera. At the remand hearing the State advised the court and the defense that the State did not have any rap sheets or information on prior convictions of its witnesses. The Supreme Court noted the State did not have such information and held the State adequately replied to the discovery request.
Similarly, in State v. Washington, 407 So.2d 1138 (La.1981), the court found no error in the trial court's refusal to order the state to obtain "rap sheets" on State witnesses. The trial judge held a hearing and was satisfied the State was not in possession of such documents.
This Court recently said "the State has no affirmative duty to find and produce rap sheets." State v. Alexandra, 451 So.2d 1278 (La.App.1984).
This, it logically follows that the State has no affirmative duty to ascertain if its witnesses have prior convictions. Upon request the State is obligated to provide information in its possession regarding the criminal convictions of its witnesses. Here the State declared it had no record of convictions on Ward. The defendant made no contrary showing and the State's response was adequate.
This assignment has no merit.

* * * * * * *164 In this case the State has declared that it does not have "rap sheets" on its witnesses. Defendants have made no contrary showing. The State has no duty to obtain "rap sheets" on its witnesses. The State's response must, therefore, be considered good and sufficient. Accordingly, we reverse the district court's order requiring the State to furnish it with any civilian witness rap sheets.
In summary, we find that defendant Castleman has received a good and sufficient bill of particulars and the State need not provide any further definition of "filming trade." We reverse the orders of the district court about which the State has complained, namely: (1) that it define trade or commerce; (2) that it provide information on the manner in which the grand jury received evidence; and (3) that it furnish the court with "rap sheets" of civilian witnesses. This matter is remanded to the district court for further proceedings consistent with this opinion.