550 So.2d 201 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Roy BENNETT, Defendant-Appellant.
No. CR 88-1284.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1989.
Rehearing Denied September 18, 1989.
Writ Denied January 19, 1990.
*202 Richard V. Burnes, Alexandria, for defendant-appellant.
Edwin L. Cabra, Lst Asst. Dist. Atty., Asa A. Skinner, Asst. Dist. Atty., Leesville, for plaintiff-appellee.
Before STOKER, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
On November 9, 1987, defendant, Roy Bennett, was charged by amended bill of information with conspiracy to commit first-degree murder, a violation of LSA-R.S. 14:26 and R.S. 14:30(A)(4), and with solicitation to commit or cause to be committed first or second-degree murder in violation of LSA-R.S. 14:28.1 and R.S. 14:30(A)(4) or R.S. 14:30.1(A)(1). On January 15, 1988, a unanimous twelve person jury acquitted defendant on the conspiracy count, but found him guilty on the solicitation charge. He was subsequently sentenced to five years at hard labor. This appeal followed. We reverse and remand to the trial court for further proceedings.

FACTS
During the first week of April 1987, defendant made an unannounced visit to the home of Charles Basco, a lifelong acquaintance, who resided in Sabine Parish. Defendant, who had not communicated with Basco for about six years, informed him that an individual named Huey P. Long was going to testify against defendant in a criminal trial. Returning a few days later, defendant informed Basco that Long's testimony would destroy defendant's business and stated that something would have to be done about Long. Basco agreed that he would look into the matter. Defendant returned to Basco's home a third time, told Basco that he had to "do away with" Long, and asked if anyone had been located to do the job.
Shortly after defendant's third visit, Basco met with Manning Coleman, Jr. at Coleman's residence in Beauregard Parish. While there, Basco related defendant's problem to Coleman. Coleman later visited Basco at his home and the pair discussed having Long "done away with." On or about April 20, 1987, defendant again visited Basco to check whether any progress had been made in finding a person to solve his problem. Basco told defendant that he found a man who would perform the task for $20,000 in cash. The pair agreed that Basco would contact Coleman to tell him to proceed with the plan.
Unbeknownst to defendant and Basco, Coleman had contacted the state police and agreed to work with them on the same day he was approached by Basco. On April 22, 1987, under police surveillance, Basco met Coleman at the restaurant of a Vernon *203 Parish motel. Coleman had been instructed by police authorities to set up a meeting at which a payment would be made. A phone meeting was arranged for May 5, 1987, in which a hit man would call the defendant.
A Louisiana state police officer, Frank Vaughn, was assigned to portray the hit man. The investigators rented two adjacent rooms at a Vernon Parish hotel, and set up listening devices in one room to record conversations occurring in that room or on the phone. Receivers and surveillance equipment were installed in the second room. At an appointed time, Coleman phoned Basco. Coleman engaged in a short conversation with Basco and then handed the phone to Vaughn. Vaughn spoke with the defendant for a while and then hung up. Minutes after the phone conversation, defendant arrived at the hotel room occupied by Vaughn.
Defendant introduced himself to Vaughn, who asked if the defendant had brought the agreed upon sum. Defendant returned to his car and retrieved $10,000 in cash. The pair then discussed the exact location of Long's residence, the persons who might be found there, the identity of Long and the details concerning payment of the $10,000 balance. Defendant explained to Vaughn that Long's testimony would cause him severe financial loss and asked if the incident would look like it was due to natural causes. In turn, Vaughn asked whether the defendant wanted anything special done. Defendant responded negatively, stating that he was not concerned about the details. Alibi witnesses were discussed and then the conversation was terminated.
Defendant and Basco were arrested on May 5, 1987. Basco subsequently entered into a plea agreement in which he agreed to testify for the State against defendant.

LAW
Defendant seeks review of his conviction based on sixteen assignments of error. We find merit in assignment numbers eleven and twelve, and thus we pretermit discussion of the remaining fourteen.
By assignment numbers eleven and twelve, defendant contends that the trial judge erred when it improperly limited his cross-examination of the State's witness, Charles Basco. Specifically, the defendant argues that the trial judge should not have blocked his cross-examination of this witness as to the terms of his plea agreement with the State, and as to whether the prosecution guaranteed that a previously imposed probation on an unrelated offense would not be revoked. Defendant further states that the purpose of this cross-examination was to show the bias and interest of the witness.
The following occurred during defense counsel's cross-examination of Basco:
"Q. Alright. You testified that you had entered a plea and you have some kind of agreement on the sentence, is that correct?
A. Well, a maximum exposure to fifteen years.
Q. Well, how did you get that maximum exposure, sir?
A. Through bargaining I guess is what you would call it.
Q. Through what, sir?
A. Through my attorney made it talking to the ...
Q. Well, do you know what the normal exposure for these offenses were?
BY MR. SKINNER
Your Honor, may we approach the bench?
BY THE COURT
Yes, you may.
(OBJECTION MAINTAINED AT BENCH)
(MR. BURNES OBJECTION MADE AT BENCH)
BY MR. BURNES
I respectfully object to the ruling of the court that I am not allowed to ask this witness what the maximum exposure was prior to his plea agreement and also the court's ruling that I cannot show the maximum sentence which this witness could have received.
* * * * * *

*204 Q. Now, Mr. Basco, you have testified about having pled guilty to some charges in this court, do you have other criminal convictions?
A. I'm on probation on a Federal charge.
Q. And, for what offense, sir?
A. Conspiracy to commit mail fraud.
Q. And, how long ago was that conviction, sir?
. . . . .
A. In latter '84 or '85, first part of `85.
Q. And, that's the offense for which you are on probation right now?
A. Yes, sir.
Q. Has your probation been revoked in the Federal Court?
BY MR. CABRA
Your Honor, I object to that.
BY THE COURT
I'm going to maintain the objection.
BY MR. BURNES
We respectfully reserve an assignment, Your Honor.
BY THE COURT
Let your assignment be noted."
Although defense counsel was permitted to question Basco in general concerning his plea agreement and his probation on federal charges, the trial judge's rulings prevented defense counsel from fully disclosing to the jury the benefits Basco received for his testimony and from showing bias or impartiality arising therefrom. We find that the trial judge's rulings denied defendant his constitutional right of cross-examination (confrontation) and his statutory right to question a witness concerning that witness's bias or interest in the case.
The Sixth Amendment to the United States Constitution and Article 1, Section 16 of the 1974 Louisiana Constitution guarantee the right of an accused in a criminal prosecution the right to confront the witnesses against him. Intrinsic to the right of confrontation is the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Under both Constitutions, the exposure of a witness's motivation is a proper right of cross-examination. State v. Brady, 381 So.2d 819 (La.1980). It is well settled that the denial of effective cross-examination is a constitutional error of the first magnitude which no amount of showing of want of prejudice can cure. Davis, supra; Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).
In the instant case, we find that the defendant was denied the right to effective cross-examination. To make fully effective use of the right of cross-examination, defendant should have been permitted to expose to the jury certain facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. As for the plea arrangement, the defendant should have been permitted to develop more fully the details surrounding it. It was important for the jury to be apprised of the maximum sentence the witness could have received for the crime before the plea arrangement was entered into. This information was essential, for without it, the jury was limited in its ability to determine the bias or impartiality of the witness.
Similarly, the defendant should have been permitted to establish whether Basco's probation had been revoked on the earlier federal charge. Apparently, defense counsel wanted to determine whether, as part of the plea agreement, the prosecution had guaranteed that Basco's probation would not be revoked if he testified against the defendant. We find that since the revocation of probation issue was probative of witness bias or interest in this case, the jury was prevented from receiving relevant information which could have diminished or negated entirely the credibility of this witness. We find support for this position in our Supreme Court's decision in State v. Nash, 475 So.2d 752 (La. 1985). In that case, the Court, in overruling the trial court, stated that the defense counsel should have been permitted to show that the State's key witness testified against the defendant in order to avoid imprisonment as a result of a parole revocation.
*205 The right to cross-examine witnesses as to their bias or interest in a case is a statutory right as well. LSA-R.S. 15:492[1] provides that:
"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same." [Emphasis added]
We have no doubt in this case that the maximum sentence the witness could have received and the revocation of probation were particular facts which tended to show the bias or interest of this witness.
We conclude that the limitation of the defendant's right to cross-examine Basco was prejudicial to the substantial rights of the defendant and constitutes reversible error. Even though there was additional evidence presented to the jury on the solicitation charge, Basco's testimony was crucial to the State in meeting its burden of proof. In reaching our decision, we are also guided by the proposition that when the right of cross-examination is impermissibly curtailed, no amount of showing of want of prejudice can cure this error. Davis, supra; Nash, supra.
For the foregoing reasons, we reverse the defendant's conviction and sentence and remand the case for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Although it has no bearing on this case, LSA-R.S. 15:492 has been repealed by Acts 1988, No. 515, § 8.