STOKER, Judge.
Defendant Roy Bennett was convicted of solicitation to commit murder, a violation of LSA-R.S. 14:28.1 and sentenced to five years at hard labor. Defendant appeals his conviction and sentence based on nineteen assignments of error. We reverse under one assignment of error, consequently, it is unnecessary to discuss the others.
FACTS
During the first week of April 1987, defendant made an unannounced visit to the home of Charles Basco, a lifelong acquaintance, who resided in Sabine Parish. Defendant, who had not communicated with Basco for about six years, informed him that an individual named Huey P. Long was going to testify against defendant in a criminal trial. Long and defendant had both been charged with aggravated burglary and attempted aggravated arson of the dwelling of Dale Behan.
Returning a few days later, defendant informed Basco that Long’s testimony would destroy defendant’s business and stated that something would have to be done about Long. Basco agreed that he would look into the matter. Defendant returned to Basco’s home a third time and told Basco that “[t]he man had to be— something done with him,” and asked if anyone had been located to do the job.
Shortly after defendant’s third visit, Bas-co met with Manning Coleman, Jr. at Coleman’s residence in Beauregard Parish. While there, Basco related defendant’s problem to Coleman. Coleman later visited Basco at his home and told Basco he had someone that would probably help him.
A few days later, defendant again visited Basco to check whether any progress had been made in finding a person to solve his problem. Basco told defendant that Coleman had found some people that would do anything he wanted done for about $20,-000. The pair agreed that Basco would contact Coleman and see what he said.
However, unknown to defendant and Basco, Coleman had contacted the state police and agreed to work with them on the same day that Basco approached Coleman. On April 22, 1987, under police surveillance, Basco met Coleman at the restaurant of a Vernon Parish motel. Coleman had been instructed by police authorities to set up a meeting between all individuals concerned. A phone meeting was arranged for May 5, 1987, in which a hit man would call the defendant.
A Louisiana state police officer, Frank Vaughn, was assigned to portray the hit man. The investigators rented two adjacent rooms at a Vernon Parish motel and set up listening devices in one room to *469 record conversations occurring in that room or on the phone. Receivers and surveillance equipment were installed in the second room.
At the appointed time, Coleman phoned Basco. Coleman engaged in a short conversation with Basco and then Basco handed the phone to defendant. Minutes after the phone conversation, defendant arrived at the hotel room occupied by Vaughn.
Defendant introduced himself to Vaughn, who asked if the defendant had brought the sum agreed upon. Defendant returned to his car and retrieved $10,000 in cash. The pair then discussed the exact location of Long’s residence, the persons who might be found there, the identity of Long, and the details concerning payment of the $10,000 balance. Defendant explained to Vaughn that Long’s testimony would cause him severe financial loss and asked if the incident could be arranged to look like it was due to natural causes. In turn, Vaughn asked whether the defendant wanted anything special done. Defendant responded “Natural. It don’t matter.” Alibi witnesses were discussed and then the conversation was terminated.
Defendant and Basco were arrested on May 5, 1987. Basco subsequently entered into a plea agreement in which he agreed to testify for the State against defendant.
On January 15, 1988, defendant was convicted by a unanimous jury of solicitation to commit murder under, LSA-R.S. 14:28.1, and sentenced to five years at hard labor. Defendant appealed his conviction to this court. On appeal, defendant’s conviction was reversed due to error in denying defendant’s constitutional right to confront and cross-examine the witnesses against him and the case was remanded to the trial court for a new trial. State v. Bennett, 550 So.2d 201 (La.App. 3d Cir.1989), writ denied, 554 So.2d 1236 (La.1990).
On November 14, 1990, defendant was again convicted by a unanimous jury of solicitation to commit first or second degree murder, under LSA-R.S. 14:28.1 and sentenced to five years at hard labor. Defendant appeals his conviction and sentence.
OPINION
Defendant contends on appeal that the trial court erred in overruling his motion to quash the Bill of Information on the grounds of prescription due to the untimely commencement of defendant’s new trial. We agree.
1.
Defendant’s first conviction was reversed and a new trial was ordered by this court on July 5, 1989. The State applied to this court for a rehearing, which was denied on September 18, 1989. Defendant’s new trial was commenced on November 12, 1990.
LSA-C.Cr.P. art. 582 provides the prescriptive period for new trials as follows:
“Art. 582. Time limitations; effect of new trial
When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer.”
LSA-C.Cr.P. art. 581 governs the effect of expiration of the time limitation set forth in art. 582:
“Art. 581. Expiration of limitations; motion to quash; effect
Upon the expiration of the limitations established by this Chapter, the court shall, upon motion of the defendant, dismiss the indictment. This right of dismissal is waived unless the motion to quash is made prior to trial.
If the indictment is dismissed under this article, there shall be no further prosecution against the defendant for the same or a lesser offense based on the same facts.”
These provisions arise from a defendant’s constitutional right to a speedy trial. La. Const, art. I § 16 (1974). See State v. Chapman, 495 So.2d 1001 (La.App.3d Cir.), writ denied, 498 So.2d 756 (La.1986).
The jurisprudence has established that the prescriptive period for a new trial *470 granted by an appellate court in a criminal case begins to run when that court’s judgment becomes final. State v. Brown, 451 So.2d 1074 (La.1984); State v. Lonigan, 298 So.2d 739 (La.1974). Under LSA-C.Cr.P. arts. 582 and 922 this court’s judgment ordering a new trial became final when the State’s motion for rehearing was denied on September 18, 1989. Therefore, the one year prescriptive period began to run on September 18, 1989.
Of course, the prescriptive period can be suspended by certain preliminary pleas filed by the defendant. LSA-C.Cr.P. art. 580; State v. Brooks, 505 So.2d 714 (La.1987). However, in the case before us, defendant’s preliminary pleas, including the motion to quash for prescription, were filed on November 12, 1990, the day his new trial commenced. The prescriptive period was not suspended by defendant’s motions because it had already run as of September 19, 1990. Therefore, the new trial was commenced untimely on November 12, 1990.
2.
At trial the State argued, and the trial judge held, that the prescriptive period was suspended by the State’s application for writ of certiorari to the supreme court following this court’s denial of the State’s motion for rehearing. We find no authority for this contention.
Acts 1983, No. 451, §§ 1 and 2 recast the provision relating to finality of judgments and set forth separate provisions in the Code of Civil Procedure and Code of Criminal Procedure. C.C.P. art. 2166 and C.Cr.P. art. 922. Significantly, the legislature provided that in civil matters an application for a writ of certiorari to the supreme court would suspend the finality of a court of appeal judgment, but in the companion article relating to criminal matters no such provision is made.
The State’s application for writ of certio-rari did not divest the trial court of jurisdiction. An application for a writ of certiorari is not analogous to an appeal to an intermediate appellate court. There is an absolute right, under La. Const, art. I § 19 (1974), to a timely appeal to an intermediate appellate court (except, of course, capital cases in which the death penalty has been imposed are appealed directly to the supreme court). Upon the entering of the order of appeal, jurisdiction immediately vests in the appellate court. LSA-C.Cr.P. art. 916.
A writ of certiorari, however, is at the discretion of the supreme court. Review by way of a writ is not a constitutional right. Talley v. Maggio, 451 So.2d 1358 (La.App. 4th Cir.1984). Jurisdiction does not vest in the supreme court until the writ is granted. Jurisdiction in this case became vested in the trial court upon this court’s remand for a new trial. LSA-C.Cr.P. arts. 853, 916 and Official Revision Comments. The State’s application for a writ of certiorari and the denial of that application had no effect on the vestiture of jurisdiction in the trial court.
Therefore, since the State’s application for writ of certiorari was denied, the trial court was never divested of jurisdiction. The trial court clearly erred in finding the new trial prescriptive period began running from January 12, 1990, the date on which the State’s application for a writ was denied, rather than on September 18, 1989, the date this court’s judgment ordering a new trial became final. Since the State failed to offer any legal reason or excuse for delay in commencing defendant’s new trial, the trial judge erred in denying defendant's motion to quash the Bill of Information for prescription.
Finally, we emphasize that the decision as to whether or not to reverse defendant’s conviction is not at our discretion. The violation of a defendant’s constitutional right to a speedy trial affects a substantial right of the accused, contemplated by LSA-C.Cr.P. art. 921. A reversal is mandated under LSA-C.Cr.P. art. 581. See also, LSA-C.Cr.P. art. 2.
In this case, the defendant has twice been unanimously convicted by a jury of solicitation to commit first or second degree murder. The evidence of his guilt is overwhelming. However, there have been violations of this defendant’s constitutional *471 rights in both of his trials. We have no choice but to order defendant’s release since further prosecution is barred under the principles of prescription.
We note that in the trial court the defendant raised the issue of the constitutionality of the statute under which he was charged in this case. He raised the issue through a motion to quash which the trial judge denied. The defendant assigned this denial as error along with numerous other assignments. In this appeal defendant vigorously argues the constitutional question. In view of our holding, we do not find it necessary to discuss this issue or any of the other assignments.
CONCLUSION
For the reasons given, the trial court’s denial of defendant’s motion to quash the Bill of Information is reversed. The defendant’s conviction and sentence are reversed and vacated. The defendant is ordered released from any further detention or prosecution concerning this solicitation to commit first or second degree murder charge.
REVERSED.