617 So.2d 550 (1993)
STATE of Louisiana
v.
Roy BENNETT.
No. CR91-257.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
*551 Edwin Louis Cabra, Leesville, for State.
Richard V. Burnes, Alexandria, for Roy Bennett.
Before STOKER, THIBODEAUX and SAUNDERS, JJ.
STOKER, Judge.
Defendant Roy Bennett was convicted of solicitation to commit murder, a violation of LSA-R.S. 14:28.1 and sentenced to five years at hard labor. Defendant appeals his conviction and sentence. We affirm.

FACTS
During the first week of April 1987, defendant made an unannounced visit to the home of Charles Basco, a lifelong acquaintance who resided in Sabine Parish. Defendant, who had not communicated with Basco for about six years, informed him that an individual named Huey P. Long was going to testify against defendant in a criminal trial. Long and defendant had both been charged with aggravated burglary and attempted aggravated arson of the dwelling of Dale Behan.
Returning to Basco's home a few days later, defendant informed Basco that Long's testimony would destroy defendant's business and stated that something would have to be done about Long. Basco agreed to look into the matter. Defendant subsequently returned to Basco's home a third time and told Basco that "[t]he man had to besomething done with him," and asked if anyone had been located to do the job.
Shortly after defendant's third visit, Basco met with Manning Coleman, Jr. at Coleman's residence in Beauregard Parish. While there, Basco related defendant's problem to Coleman. Coleman later visited *552 Basco at his home and told Basco he had someone that would probably help him.
A few days later, defendant again visited Basco to check whether any progress had been made in finding a person to solve his problem. Basco told defendant that Coleman had found some people that would do anything he wanted done for about $20,000. The pair agreed that Basco would contact Coleman about it.
However, unknown to defendant and Basco, Coleman had contacted the state police and agreed to work with them on the same day that Basco approached Coleman. On April 22, 1987, under police surveillance, Basco met Coleman at the restaurant of a Vernon Parish motel. Coleman had been instructed by police authorities to set up a meeting between all individuals concerned. A phone meeting was arranged for May 5, 1987, in which a hit man would call the defendant.
A Louisiana state police officer, Frank Vaughn, was assigned to portray the hit man. The investigators rented two adjacent rooms at a Vernon Parish motel and set up listening devices in one room to record conversations occurring in that room or on the phone. Receivers and surveillance equipment were installed in the second room.
At the appointed time, Coleman phoned Basco. Coleman engaged in a short conversation with Basco and then Basco handed the phone to defendant. Minutes after the phone conversation, defendant arrived at Vaughn's hotel room.
Defendant introduced himself to Vaughn, who asked if the defendant had brought the sum agreed upon. Defendant returned to his car and retrieved $10,000 in cash. The pair then discussed the exact location of Long's residence, the people who might be found there, the identity of Long, and the details concerning payment of the $10,000 balance. Defendant explained to Vaughn that Long's testimony would cause him severe financial loss and asked if the incident could be arranged to look like it was due to natural causes. In turn, Vaughn asked whether the defendant wanted anything special done. Defendant responded, "Natural. It don't matter." Alibi witnesses were discussed and then the conversation ended.
Defendant and Basco were arrested on May 5, 1987. Basco subsequently entered into a plea agreement in which he agreed to testify for the State against defendant.
On January 15, 1988, defendant was convicted by a unanimous jury of solicitation to commit murder, under LSA-R.S. 14:28.1, and sentenced to five years at hard labor. Defendant appealed his conviction to this court. On appeal, defendant's conviction was reversed due to error in denying defendant's constitutional right to confront and cross-examine the witnesses against him and the case was remanded to the trial court for a new trial. State v. Bennett, 550 So.2d 201 (La.App. 3d Cir.1989), writ denied, 554 So.2d 1236 (La.1990).
On November 14, 1990, defendant was again convicted by a unanimous jury of solicitation to commit first or second degree murder, under LSA-R.S. 14:28.1, and sentenced to five years at hard labor. Defendant again appealed his conviction and sentence. This court reversed defendant's conviction on the basis of one assignment of error without discussing the remaining assignments. State v. Bennett, 592 So.2d 467 (La.App. 3d Cir.1991). On appeal by the State, the supreme court reversed this court's judgment and remanded the case to us for consideration of the remaining assignments of error. State v. Bennett, 610 So.2d 120 (La.1992). The remaining assignments of error are before us now in this appeal.

OPINION

1.
Defendant contends the trial judge erred in denying his motions to quash the bill of information. We disagree.
First, defendant argues that LSA-R.S. 14:28.1, which sets forth the crime of solicitation for murder, is unconstitutionally vague since there is no such offense in Louisiana as "murder" or "first or second degree murder". Also defendant urges *553 that the statute uses the disjunctive in stating "solicitation for first or second degree murder", leaving the nature of the crime charged against the defendant unclear.
Initially, we note that, in raising an issue as to the constitutionality of the statute, defendant failed to make the attorney general a party to the proceedings and failed to serve the attorney general with pleadings, as required by LSA-C.C.P. art. 1880. State v. Albritton, 610 So.2d 209 (La.App. 3d Cir.1992).
Moreover, we see no vagueness in the statute. The State needs to prove incitement of either first or second degree murder to prove defendant guilty under LSA-R.S. 14:28.1. In charging the defendant, the State does not have to choose which type of murder defendant incited, nor is the jury required to do so if it finds defendant guilty. The statute is not unconstitutionally vague.
In any event, any vagueness or uncertainty as to the nature of the accusations against defendant was clarified and corrected by the State's bill of particulars. State v. Vanderhoff, 415 So.2d 190 (La. 1982); State v. Baylis, 388 So.2d 713 (La. 1980).
Alternatively, defendant argues that LSA-R.S. 14:28.1, solicitation for murder, is duplicative of LSA-R.S. 14:28, inciting a felony, and, thus, arbitrarily vests the district attorney with the authority to charge him with either solicitation for murder, under LSA-R.S. 14:28.1, or inciting a felony, under LSA-R.S. 14:28.
LSA-R.S. 14:28.1 is much narrower than LSA-R.S. 14:28 and carries a greater penalty, since it deals with incitement of two of the worst types of felonies. Therefore, the statutes are not duplicative. Moreover, the district attorney does have the power and discretion to choose which felonies with which a defendant will be charged. LSA-C.Cr.P. art. 61.
Next, defendant argues that the bill of information was defective under LSA-C.Cr.P. art. 480 because it charged alternative crimes through use of the disjunctive "or" in "solicitation of first or second degree murder".
LSA-C.Cr.P. art. 480 authorizes conjunctive, as opposed to disjunctive, charging in a bill of information. However, defendant's bill of information does not contain disjunctive charging; it merely recites the language of LSA-R.S. 14:28.1, which contains the word "or".
Finally, we find that it is irrelevant whether the jury found defendant guilty of soliciting first degree murder or second degree murder, since solicitation of either is proscribed under the same statute, LSA-R.S. 14:28.1. Also, there is no distinction made in the sentencing range under LSA-R.S. 14:28.1.

2.
Defendant argues that the trial court's charge to the jury with respect to the definition of reasonable doubt violated his right to due process under the holding of Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328 112 L.Ed.2d 339 (1990). In Cage, the supreme court found an instruction equating reasonable doubt with "grave uncertainty" and an "actual substantial doubt", and stating that what was required was a "moral certainty" that the defendant was guilty, was constitutionally defective. In the case before us, the trial judge's jury instruction on reasonable doubt equated it with "an actual or substantial doubt".
Defendant failed to object to the jury instruction on reasonable doubt. Therefore, he waived any objection to it and is precluded from raising the issue on appeal. State v. Young, 596 So.2d 403 (La.App. 4th Cir.), writ denied, 600 So.2d 660 (La.1992), and cases cited therein.

3.
Next, defendant contends the jury was improperly charged as to the definition of LSA-R.S. 14:28.1, solicitation for murder, since the statute is invalid. As already discussed, the statute is not unconstitutional. The jury charge simply tracked the language of the statute and, thus, was not incorrect.

*554 4.
Defendant further argues on appeal that the trial court erred in denying defendant's motion for exculpatory evidence, under LSA-C.Cr.P. art. 718, by refusing to provide defendant with copies of his coconspirators' criminal records, or "rap sheets". The coconspirators named were Charles E. Basco, Manning Coleman, Jr. and Huey P. Long. The State responded to defendant's request by stating that defendant already had a rap sheet on Huey P. Long and that it did not have rap sheets on the others in its possession.
Defendant relies on State v. Harvey, 358 So.2d 1224 (La.1978). However, Harvey involved a failure of the State to respond in any manner to the defendant's request for conviction records. Therefore, it is inapposite.
In the case before us, the State did reply to the request by stating that it did not possess the conviction records or the plea bargain agreements made with Basco and Manning. The State does not have a duty to ascertain if its witnesses have prior convictions or to obtain rap sheets on them. State v. Velez, 588 So.2d 116 (La.App. 3d Cir.1991), writs denied, 592 So.2d 408 (La. 1992); State v. Seifert, 524 So.2d 160 (La. App. 4th Cir.1988). The State did not use Coleman or Long as witnesses at trial. Basco did testify at trial. He admitted that he had several prior felony convictions and gave details about them. Defendant has not shown any prejudice arising from his alleged lack of a rap sheet on Basco.
Defendant further complains that he was not provided a copy of the State's plea bargain with Basco. When a key witness testifies because of an agreement between the State and the witness, that information must be revealed to the defendant. State v. Williams, 338 So.2d 672 (La.1976). However, informing the defendant of the plea bargain without actually furnishing a written copy of the agreement is sufficient to satisfy the Brady rule requiring disclosure. State v. Francis, 486 So.2d 346 (La.App. 3d Cir.), writ denied, 492 So.2d 1216 (La.1986). In any event, Basco testified as to the details of his plea bargain under which he testified as the State's witness in this case. Defendant has nothing to complain of in that respect.
Moreover, under LSA-C.Cr.P. art. 722, the State has a duty to provide the defendant with copies of statements by codefendants which are intended for use at trial. Defendant's coconspirators were not his codefendants. Therefore, he was not entitled to the statements under art. 722. See State v. Fleming, 574 So.2d 486 (La. App. 4th Cir.1991), writ denied, 592 So.2d 1313 (La.1992).
Defendant also argues he was entitled to copies of his own statements under LSA-C.Cr.P. art. 716. Article 716 imposes a duty on the State to inform the defendant of the existence, but not the contents, of his own oral statements which the State intends to use at trial. Defendant was duly provided with this information as to his own oral statements, including information as to when, where and to whom the statements were made. The State had no duty to disclose the substance of the statements.
Also, LSA-C.Cr.P. art. 716 requires the State to provide defendant with any written statements made by defendant which it intends to use at trial. The State gave defendant permission to inspect its file. Defendant has nothing to complain of in that respect, either.

5.
Next, defendant claims the trial judge also erred in failing to permit him to view inculpatory statements made by Basco after he pleaded guilty, under LSA-C.Cr.P. art. 721, which the State intended to use at trial. The trial judge ruled that any such statements were attorney work product and not discoverable. We find the issue is moot since none were used at trial.
Defendant further argues that the trial judge erred in denying defendant's discovery motion for all statements by Charles Basco which the State intended to use at trial. Defendant contends the State had a duty to produce those statements under *555 LSA-C.Cr.P. art. 721, relating to hearsay statements of coconspirators, and LSA-C.Cr.P. art. 722, relating to exculpatory evidence.
Defendant errs in relying on these statutes. LSA-C.Cr.P. art. 721 only requires the State to provide notice of its intent to use hearsay statements of coconspirators and does not require production of the statements themselves, unless, of course, they are exculpatory. In the case before us the State not only gave defendant notice of its intent to use Basco's statements at trial, it also allowed defendant to see and copy the statements. Defendant has not shown that the State withheld any exculpatory evidence. Therefore, we see no error or prejudice to defendant.

6.
Defendant's next assignment of error concerns alleged hearsay evidence which the trial judge allowed to be introduced into evidence.
First, defendant complains that State Trooper Cooper was permitted to testify as to a conversation he had with Manning Coleman, Jr., who was deceased at the time of trial, and as to what he related of that conversation to Trooper Morris. This testimony was not hearsay because it was offered to explain Trooper Cooper's own actions in the events leading to defendant's arrest and not for the truth of the matter asserted. See State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Mims, 524 So.2d 526 (La.App. 2d Cir.), writ denied, 531 So.2d 267 (La.1988). In any event, the testimony by Trooper Cooper was cumulative of other evidence presented at trial.
Next, defendant alleges that in-court testimony by Basco, as to a conversation between Basco and Coleman, was inadmissible hearsay. The testimony by Basco as to what he, himself, said was clearly admissible under LSA-C.E. art. 801(C) as non-hearsay. The testimony by Basco as to what Coleman said was admissible as non-hearsay because it was not offered to prove the truth of the matter asserted, and the trial judge admonished the jury to that effect. Also, the statements are admissible under LSA-C.E. art. 801(D)(3)(b), since they were made in furtherance of the conspiracy.
Finally, defendant argues that the testimony of Trooper Morris, as to statements made by Manning Coleman, was inadmissible hearsay. Again, this is an exception to the hearsay rule, LSA-C.E. art. 804(A)(4), since Coleman was an unavailable declarant.

7.
In this assignment of error, defendant argues that the trial judge erred in permitting Basco to testify about the impression he received as to what defendant meant when he said he had to have something done about Long, in order to prevent Long from testifying against him. Basco first testified as to what defendant said. Basco then testified that his impression was that defendant wanted Long killed. This testimony was relevant and clearly admissible as an inference rationally based on the perception of the witness, which is helpful to the determination of a fact in issue. LSA-C.E. art. 701.

8.
Next, defendant contends he was deprived of his right to a full cross-examination of both Trooper David Burns and Trooper Frank Vaughn. Defendant attempted to cross-examine the officers as to the delay in having the money fingerprinted. The money was given by defendant to Trooper Vaughn, who was posing as a hit man, when he hired him to kill Long. Vaughn turned the money ($10,000) over to Trooper Morris, who photocopied it and then tried to have it fingerprinted by the city police. The city police could not fingerprint it for several days, so Trooper Morris kept the money until then.
Defendant questioned Trooper Burns about the delay, implying that Trooper Morris kept the money for other reasons. The State objected on the basis that defendant misstated Trooper Morris's prior testimony in phrasing the question. The trial judge sustained the objection since the misstatement *556 could have misled the jury. Defendant was then permitted to rephrase the question and question Trooper Burns extensively on the subject. Defendant was not denied his right to cross-examine Trooper Burns.
Defendant also argues he was denied his right to cross-examine Officer Vaughn on the delay in fingerprinting the money. However, Trooper Vaughn testified that he returned to Lake Charles after defendant was arrested and had no personal knowledge of what happened to the money after he turned it over to Trooper Morris. Therefore, defendant's questions called for mere speculation by Trooper Vaughn, which the trial judge properly excluded. See LSA-C.E. art. 602.

9.
In this assignment of error, defendant claims the trial judge erred in failing to suppress a tape recording of a conversation he had with Trooper Vaughn, who was posing as a hit man. Defendant mainly objected on the basis that the tape contained "gaps" in the conversation, where areas of the tape were inaudible. The trial judge admitted the tape, reasoning that the tape was the best evidence of the recorded conversation, that the "gaps" affected the weight of the evidence rather than its admissibility, and that, despite the "gaps", the tape was sufficiently audible for the jury to discern the conversation.
Defendant relies on State v. Green, 443 So.2d 531 (La.1983), which discusses the admissibility of other crimes evidence on a tape recording which contained an inculpatory statement. Green is simply not apposite to the case before us.
The unaltered tape was the best evidence of the recorded conversation. LSA-C.E. art. 1002; State v. Auzenne, 305 So.2d 507 (La.1974). The jury was also provided with a transcript of the tape, by stipulation of the parties. The trial judge did not abuse his discretion in permitting the tape to be introduced into evidence. LSA-C.E. art. 1008. The "gaps" in the tape went to the weight of the evidence and not its admissibility. LSA-C.E. art. 104. See State v. Bonanno, 373 So.2d 1284 (La.1979); State v. Thomas, 504 So.2d 907 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987); State v. Oliver, 499 So.2d 295 (La.App. 1st Cir. 1986), writ denied, 505 So.2d 56 (La.1987).

10.
Defendant next argues that the trial judge erred in admitting the State's exhibit of $10,000 cash into evidence without a proper foundation, i.e. the chain of custody was not properly established. Defendant contends there is a gap in the chain of custody. Trooper Morris took possession of the $10,000 cash given by defendant to Vaughn. At that time, Trooper Morris also had possession of money from another case he was involved in. Defendant contends the money from both cases became mixed together, causing a break in the chain of custody.
Trooper Morris testified that he put the money from both cases into the trunk of his car. However, prior to doing so, he photocopied the money he received from Vaughn on the day he received it. Thus, he was able to identify which money he received from Vaughn when he turned it over to the state police evidence custodian. The photocopies were also verified by three other sources. Therefore, the money was not mixed together with the money from the other case. There was no break in the chain of custody and a proper foundation was laid.

11.
Defendant argues by this assignment that the sentence imposed is invalid, under LSA-C.Cr.P. art. 872, because it rests upon an invalid statute, indictment and judgment. As previously discussed, the statute is not invalid. Therefore, neither are the indictment, judgment and sentence.

12.
Finally, defendant contends the trial judge erred in denying his motion for new trial and motion in arrest of judgment due to the other alleged trial errors previously discussed. For the reasons already given, the trial judge did not err in denying defendant's motions.

*557 DISPOSITION
For the reasons given, defendant's conviction and sentence are affirmed. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED.