889 So.2d 335 (2004)
STATE of Louisiana, Appellee
v.
James E. DIVERS, Appellant.
No. 38,524-KA.
Court of Appeal of Louisiana, Second Circuit.
November 23, 2004.
*341 R. Neal Walker, New Orleans, Christine Lehmann, for Appellant.
Jerry Jones, District Attorney, Madeleine Slaughter, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
GASKINS, J.
The defendant, James E. Divers, was originally convicted of two counts of first degree murder and sentenced to death. The Louisiana Supreme Court reversed the convictions. On remand, the trial court granted the defendant's motion to quash the indictment, and this court affirmed. The defendant was then reindicted on two counts of first degree murder. The state subsequently reduced the charges to second degree murder. The defendant was convicted of the reduced charges and sentenced to serve two consecutive sentences of life imprisonment. He appeals. We affirm the defendant's convictions and sentences.

FACTS
The defendant was one of two men convicted of the "Moon Lake murders" of Winston Vandervield (a.k.a. Otis Keith Straughter or Strawder) and Simmie Lee Stevenson.[1] On April 12, 1988, the two victims were found bound and gagged near the Moon Lake recreational area in Monroe. Both had been shot in the head. Vandervield was dead, and Stevenson subsequently died without regaining consciousness.
Stevenson's 1983 maroon Chevrolet Monte Carlo was found in nearby Sterlington. The police discovered blood throughout the car, together with a piece of cut electrical cord, which matched the electrical cord tied around Stevenson's wrists. No usable prints were found in Stevenson's car.
While Stevenson's home was undisturbed, a search of Vandervield's home revealed it had been ransacked. On the hallway floor, the officers found a microwave and a vacuum cleaner. The electrical cord of the vacuum cleaner had been cut. The remaining electrical cord on the vacuum cleaner matched the electrical cord found at the murder scene and in the trunk of Stevenson's car. A Kool cigarette butt was found in the house.[2] The officers found and photographed two tennis shoe imprints on the concrete surface of the carport.
Divers' fingerprints were found in Vandervield's kitchen on a highball glass in the sink, and on a beer can and an orange juice bottle in the trash can. The police *342 also found fried chicken in the kitchen trash.
The autopsies established that both men had died of gunshot wounds to the head. Vandervield had recently eaten chicken. There was no evidence of recent sexual activity by either man. Vandervield was HIV-positive.
Several weeks later, the Dallas Police Department found Vandervield's missing car, a new white Dodge Shadow; a stolen license plate had been placed on it. When they checked the vehicle identification number, they ascertained that the car had been stolen in a Louisiana homicide case. The defendant's fingerprints and palm prints were found on the inside and outside of the car. Approximately 14 Kool cigarette butts were also recovered. A resident who lived near where the car was found identified the defendant at trial as being around the car on two occasions before it was towed by the police.
At this time, Divers and his girlfriend, Annie Benton, were living in Dallas in an apartment leased by Sharon Felder. Prior to Easter 1988, Ms. Benton's family sent her a bus ticket to come home to Monroe for the holiday. Although Ms. Benton did not use the ticket, Ms. Felder testified that Divers left Dallas around April 5 or 6; after that, Ms. Felder never saw the bus ticket again. According to Ms. Felder, Divers returned to Dallas on April 12 at about 10:00 a.m. When he returned, he was in possession of a small white car. At one point, he said his uncle gave him the car; he later said he obtained it from two homosexuals. After she learned that the car had been towed by the police, Ms. Felder became frightened and did not return to her apartment.
After receiving information as to the name and location of the man seen near the car, the police went to the apartment complex where Divers lived on May 4, 1988. The manager, noting she had not seen Ms. Felder that day and being concerned for Ms. Felder's safety, gave the officers permission to enter the apartment. The officers, two Dallas detectives and two deputy sheriffs from Ouachita Parish, entered the apartment. They found Ms. Benton and her child asleep in one bedroom; she denied that anyone else was in the apartment. The officers continued searching and discovered Divers hiding in a closet.
Divers was taken into custody. His prints were matched to latent fingerprints found at Vandervield's house. Divers initially identified himself to the police as his brother, Jesse Divers. Eventually he admitted his identity. He claimed that he had gotten the car from two drug dealers at a liquor store in exchange for an eight ball of cocaine valued at about $250.
A pair of tennis shoes seized from Divers was later found to correspond in design, proportional size and general shoe wear to the shoe impression recovered from Vandervield's carport. Among the items obtained from the Dallas apartment was a watch identified as belonging to Stevenson by his sister. There was also a red jacket identified by Vandervield's sister as resembling one owned by her brother.
After Divers' arrest, the police received information leading them to Divers' cousin, Everett English. He gave a statement to the police in which he admitted his participation in the murders and implicated Divers. According to English, he and Divers went to Vandervield's house. Divers struck Vandervield. When Stevenson came by the house later, Divers forced him inside at gunpoint. Both victims were bound and placed in the Monte Carlo, which Divers drove to Moon Lake. (Before they left the house, Divers wiped it down *343 to remove fingerprints.) English followed in another car. At Moon Lake, English heard two gunshots. When Divers told him to help him remove the victims from the Monte Carlo, he refused. However, after they abandoned the Monte Carlo in Sterlington, English dropped Divers off at the spot where they had left the Dodge, which contained items stolen from Vandervield's house. After his interview with the police, English was arrested.
The police returned to Dallas to speak to Divers again. He told the investigators that they didn't have a weapon and that they could take him to court if they had evidence.
Thereafter, Divers was returned to Monroe from Dallas. He was indicted on two counts of first degree murder. In 1991, he was convicted as charged and sentenced to death. However, the Louisiana Supreme Court reversed the convictions due to the trial court's failure to excuse certain jurors for cause. State v. Divers, 94-0756 (La.9/5/96), 681 So.2d 320.
On remand, the trial court granted Divers' motion to quash the indictment because of systemic discrimination in the selection of grand jury forepersons; we affirmed. State v. Divers, 34,748 (La.App.2d Cir.6/22/01), 793 So.2d 308, writ denied, 2001-2544 (La.8/30/02), 823 So.2d 937. The defendant was then reindicted on two counts of first degree murder. The state subsequently reduced the charges to second degree murder pursuant to an agreement with defense counsel to dismiss about 60 defense motions.
In June 2003, Divers was tried on two counts of second degree murder. The evidence presented by the state included the testimony of English, who had refused to testify in Divers' previous trial; he testified in the instant trial only after being initially held in contempt for refusing to do so. Also testifying was Donald Elledge, a former cellmate of Divers in the Ouachita Parish jail. According to Elledge, the defendant admitted murdering both victims.[3] Elledge testified that Divers had his girlfriend get rid of the gun used in the murders. Divers also told him a red jacket was the only thing connecting him to the crime scene.
Divers was convicted as charged and received two consecutive sentences of life imprisonment. The defendant's oral motion to reconsider sentence was denied.
Divers appeals. He asserts 17 assignments of error.[4]

RESTRICTIONS ON CROSS-EXAMINATION
In his first two assignments of error, the defendant argues that the trial court erred in restricting his cross-examination of witnesses Donald Elledge and Everett English.

Cross-examination
Due process affords the defendant the right of full confrontation and cross examination of the state's witnesses. U.S. Const. amend. 6; La. Const. art. 1 § 16; Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *344 State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198. Full cross-examination includes the opportunity to demonstrate any bias or self-interest which is attached to a witness's testimony. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Rankin, 465 So.2d 679 (La.1985); State v. Thomas, 32,215 (La.App.2d Cir.8/18/99), 747 So.2d 610, writ denied, 1999-2806 (La.4/7/00), 759 So.2d 90. Evidentiary rules may not supersede this fundamental right. State v. Van Winkle, supra. Except as otherwise provided by legislation, extrinsic evidence to show a witness's bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness. La. C.E. art. 607(D)(1); State v. Grace, 94-295 (La.App. 5th Cir.9/27/94), 643 So.2d 1306; State v. Thomas, supra.
Confrontation errors are subject to the harmless error analysis so the verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial was surely unattributable to the error. State v. Broadway, 1996-2659 (La.10/19/99), 753 So.2d 801. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Butler, 30,798 (La.App.2d Cir.6/24/98), 714 So.2d 877, writ denied, 1998-2217 (La.1/8/99), 734 So.2d 1222. The trial court has the discretionary power to control the extent of the examination of witnesses provided the court does not deprive the defendant of his right to effective cross-examination. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473.

Donald Elledge
The defendant argues that the trial court erred in not allowing him to cross-examine Elledge as to the facts of a rape conviction after Elledge had given false testimony about the offense during the first trial. He asserts that the trial court's refusal to allow him to cross-examine Elledge as to his prior falsehoods about the facts of the rape violated his right to confront the witness.
A jury may reasonably accept the testimony of a jailhouse witness as credible. State v. Robinson, XXXX-XXXX (La.4/14/04), 874 So.2d 66.
At the time of the first trial, Elledge had about 12 felony convictions, including a Texas conviction for a 1982 rape. By the time of the second trial, he had about 16 convictions. At the first trial and a perpetuation hearing prior to the first trial, Elledge, when asked about the rape conviction, gave an exculpatory explanation of the crime, categorizing it as a misunderstanding with a live-in girlfriend. At the second trial, both the state and the defense agreed to exclude all references to the first trial. The trial court barred the defendant from going into the facts of the 1982 rape, finding that it was a collateral issue that risked introducing evidence of the defendant's first trial.
Although Elledge volunteered exculpatory testimony to mitigate the rape conviction in the defendant's first trial, he made no such exculpatory statements about the crime in the second trial. Instead, he testified correctly about his conviction for the offense of rape, the date of his conviction, and the sentence he received, the full information allowed by La. C.E. art. 609.1.
*345 The trial court had the right to limit the questioning pursuant to La. C.E. art. 609.1(C)(3), in that the probative value of allowing a collateral attack on one of Elledge's many convictions was far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
The state and the defendant had agreed to bar any references during voir dire and trial about the defendant's first trial. The defendant argued to the trial court that he could avoid the problem in questioning Elledge by referring to the first trial as "prior proceedings." The trial court found this not to be sufficient protection against references to the defendant's first trial.
A trial court is accorded great deference in evidentiary rulings. A trial court can refuse to allow cross-examination of a witness as to prior inconsistent statements under oath on a collateral matter when this impeachment evidence does not exculpate the defendant or contradict the witness's testimony regarding the defendant. State v. Jackson, XXXX-XXXX (La.12/7/01), 800 So.2d 854. It cannot be said that the trial court was clearly wrong in ruling that this line of questioning was a collateral issue that would confuse the jury and jeopardize the second trial by introducing evidence of the first trial.
Also, as the state pointed out at trial and in brief, the evidence that the defendant wanted to use to impeach Elledge's earlier testimony about the rape would have been inadmissible hearsay, consisting of police reports and testimony of persons other than the victim, who had since died of causes unrelated to the offense. The defendant has provided no argument in brief as to how any of the impeachment evidence would have been admissible at the trial.
But, even if this court were to find that the trial court improperly limited questioning of Elledge, such a confrontation error is subject to a harmless error analysis. Delaware v. Van Arsdall, supra; State v. Butler, supra.
A review of the direct examination and the cross-examination of Elledge shows he was presented to the jury with no positive attributes whatsoever. The defense counsel elicited before the jury detailed testimony of Elledge's long history of criminal activity, including numerous fraud-based convictions. Elledge admitted to being a multiple rapist, robber, thief, and con man, and was again in prison for new felony crimes. With this witness's background, it is clear that any error in refusing to allow the defendant to go into more detail on just one of Elledge's many prior convictions would be harmless error. See State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94.
Despite his past and very questionable veracity, Elledge did provide the jury with details of the crime and of pretrial plea discussions that were not common knowledge. This included possible plea discussions between the state and defense counsel and the defendant's concern about a red jacket linking him to the murders. Elledge's testimony was clearly corroborated by other witnesses and evidence.
We find that the trial court did not abuse its discretion in refusing to allow the defendant to impeach Elledge as to the facts of the earlier conviction; but even if the trial court did err, the error was harmless.
This assignment of error lacks merit.

Everett English
The defendant argues that the trial court violated his right to confrontation when it barred him from questioning Everett *346 English about whether he had a homosexual relationship with one of the victims.
When English testified at the defendant's second trial, and detailed how he and the defendant robbed and killed the two victims, English portrayed the defendant as the ringleader and himself as an unwilling accomplice. English denied knowing the two victims.
On cross-examination, the defendant sought to question English as to whether he had a homosexual relationship with one of the victims. The defendant argued that the evidence was necessary to show that English had a motive to act alone in killing the two men, because one of the victims had the AIDS virus and English was upset because he had been exposed to the disease. The trial court denied the defendant's request. The defendant adduced no other evidence on this issue. On appeal, the defendant argues that the trial court's ruling violated his right to confront English and the verdict may have been different had the jury heard English's testimony on this issue.
The case the defendant cites for authority, State v. Van Winkle, supra, is inapplicable to this case. In Van Winkle, supra, a 12-year-old boy was found murdered in his bed. The autopsy revealed dilation of his anus but no recent trauma to the rectal area. The two adults in the apartment were the child's mother and a male boarder. The mother was tried for second degree murder. At trial, she attempted to introduce evidence that the male boarder was a homosexual, and that he and a homosexual partner killed the victim, who was the target of homosexual activity. The trial court refused to allow the evidence to be introduced, restricting the defendant's questioning of five different witnesses. The mother was convicted of manslaughter. The Louisiana Supreme Court found the evidence to be relevant to establish that the male boarder could have committed the crime. The autopsy indicated that the victim might have been penetrated anally at some point. The evidence also demonstrated that blood was found in the victim's underwear and that the male boarder associated at a gay bar with another man seen leaving the victim's four-plex the morning of the murder. Because specific evidence supported the defendant's defense, the conviction was reversed, and the case remanded for a new trial.[5]
In the present case, English admitted to participating in the killings, and was convicted of the murders. As such, the evidence of sexual orientation was not needed to prove that English committed the crime. Instead, the evidence appears to be intended to attack English's character and would be prohibited by La. C.E. art. 608(B). The sexual orientation of English is not the determinative factor in this case. It does not rebut the straightforward evidence that English admitted to being present, with the defendant, when the two victims were beaten, robbed, kidnapped, and then shot to death. La. C.E. art. 402; State v. Probst, 623 So.2d 79 (La.App. 1st Cir.1993), writ denied, 629 So.2d 1167 (La.1993).
As the state correctly points out, when Elledge attempted to testify on direct examination earlier in the trial about the defendant telling him that the defendant and one of the victims had a homosexual relationship, the prosecutor immediately stopped his testimony. The parties apparently had agreed that the issue of homosexual *347 activity was not relevant in the trial, and Elledge's statement went beyond the agreed upon parameters for testimony. At the request of defense counsel, the jury was instructed to disregard the testimony. If it was inappropriate for the state to elicit this topic during Elledge's testimony, it stands to reason that it would be equally so during English's testimony.
As previously noted, confrontation errors are subject to a harmless error analysis. Delaware v. Van Arsdall, supra; State v. Butler, supra. Although the defendant makes general allegations that the verdict would have been different had the jury heard the questioning about English's sexual orientation, the argument provides no specific basis of how the sexual orientation of the convicted co-defendant, who admitted his participation in the murder, would have changed the outcome. This is particularly true given the forensic evidence placing the defendant at Vandervield's residence and the defendant's possession of several items belonging to the murder victims shortly after the killings.
We find no abuse in the trial court's discretion, particularly in light of the fact that the defendant had previously agreed that sexual orientation was not an issue.
This assignment of error is without merit.

EVIDENCE OF PLEA DISCUSSIONS
The defendant asserts that the trial court violated La. C.E. art. 410 by allowing the state to corroborate Elledge's testimony by introducing evidence of the defendant's plea discussions. Elledge testified that, while jailed together, the defendant gave him a detailed account of the crime and the defendant expressed concern about his possession of a red jacket belonging to one of the victims. During Elledge's testimony, he stated that Divers told him that the district attorney had offered him a plea bargain of zero to ten years if he pled guilty and took a blood test of some kind. Divers told Elledge that he was informed of the proposed deal by his attorney.
Elledge was questioned about a document he had signed at the defendant's request which asserted that Divers had not discussed his case with Elledge. On cross-examination, the defendant's attorney questioned Elledge about whether the defendant confessed to Elledge, or whether Elledge had actually found out information by examining the defendant's court documents.
Richard Sherburne, Jr., a former assistant district attorney (ADA), testified that after learning from the autopsy report that Vandervield was HIV-positive, he spoke to Wilson Rambo, Divers' attorney, about Divers being tested. Had Divers also been infected, Sherburne was willing to talk to the district attorney about reducing the charges from first degree murder. Rambo informed Sherburne that Divers was not interested in being tested. When Sherburne later learned that Elledge said Divers had mentioned taking an AIDS test, he was surprised. He testified that Rambo was the only person with whom he had discussed the matter and that it was never reduced to writing.
In pertinent part, La. C.E. art. 410 states:
A. General rule. Except as otherwise provided in this Article, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
...
(3) Any statement made in the course of any court proceeding concerning either of the foregoing pleas, or any plea discussions with an attorney for or other *348 representative of the prosecuting authority regarding either of the foregoing pleas; or
(4) Any statement made in the course of plea discussions with an attorney for or other representative of the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn or set aside.
B. Exceptions. However, such a statement is admissible:
(1) In any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it; or
(2) In a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.
The rules prohibiting the admissibility of statements made during the course of plea discussions serve to promote the negotiated disposition of criminal cases by giving the defendant protection from involuntary self-incrimination at two ends of the plea-bargaining spectrum: while he is negotiating over the disposition of his case and while he is offering or entering a plea that is rejected or is later withdrawn. State v. Buffington, 1997-2423 (La.App. 4th Cir.2/17/99), 731 So.2d 340. Introduction of the defendant's statements to Elledge does not discourage the negotiated disposition of criminal cases, nor did the testimony of Sherburne, which merely allowed meaningful corroboration of Elledge's testimony about little-known facts which could have only been revealed to him during private conversation with the defendant. Since this testimony about the former plea negotiation did not, in itself, tend to show the defendant's guilt, the trial court did not commit reversible error in allowing its introduction.
This assignment of error lacks merit.

CHALLENGES FOR CAUSE
In two assignments of error, Divers contends that the trial court erred in its handling of challenges for cause. In one assignment, he claims that the trial court wrongly rejected two of his challenges for cause, thereby depriving him of peremptory challenges. In the other assignment, he argues that the trial court erred in granting the state's challenges for cause on three jurors, effectively allowing the state extra peremptory challenges.

Law
La. C. Cr. P. art. 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
...
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court;....
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he *349 need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges. An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Taylor, XXXX-XXXX (La.5/25/04), 875 So.2d 58.
A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683; State v. Taylor, supra.
The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. State v. Cross, supra; State v. Gipson, 37,132 (La.App.2d Cir.6/25/03), 850 So.2d 973, writ denied, 2003-2238 (La.1/30/04), 865 So.2d 75.
An appellate court uses an abuse of discretion standard of review with respect to challenges for cause because of the trial court's superior position to make judgment calls with respect to jurors' facial expression, body language, and intonation when answering voir dire. State v. Ledet, 96 0142 (La.App. 1st Cir.11/8/96), 694 So.2d 336, writ denied, 96-3029 (La.9/19/97), 701 So.2d 163.
In the present case, the record shows that at the conclusion of the voir dire, the trial court, the state and the defendant stipulated that the defendant had used all of his peremptory challenges. Accordingly, the review is whether the entire voir dire shows the trial court erred in its rulings on the listed prospective jurors.

Juror Campbell
The defendant challenged Jerry Campbell for cause because of his confusion about the felony murder doctrine and his relationship with Stevenson. Campbell and Stevenson worked at the same medical facility; however, since they worked different shifts, their interaction was restricted to exchanging greetings. The trial court found Campbell had been somewhat confused by the questioning about the felony murder doctrine, and had only a nodding relationship with a victim; however, it held that neither the confusion nor the relationship with a victim was sufficient for a challenge for cause. Thereafter, the defense exercised a peremptory challenge against Campbell.
The defendant's argument that Campbell's answers show an inability to follow the law is not supported by the record. The lengthy questioning about felony murder was confusing and included a misstatement of the law. As to his acquaintance with one of the victims, the fact that a juror has a relationship with the victim is not itself enough to sustain a challenge for cause. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. Campbell made it clear that if the evidence pointed toward the defendant, he would vote guilty; if it didn't, he would vote not guilty. Reviewing Campbell's responses as a whole, we detect no abuse of the trial court's discretion in denying the defendant's challenge for cause.

Juror Whittington
The defendant challenged Susan Whittington on the basis that she indicated that she would hold against the defendant *350 his exercise of his Fifth Amendment right to not testify. The trial court found that Whittington's responses did not rise to a level to justify a challenge for cause. The defense later exercised a peremptory challenge against Whittington.
Although Whittington stated that if the defendant did not testify the first thing that would pop in her mind was that he was hiding something, she also said that she was fine with him not testifying as long as she heard the case from somebody. The record is devoid of any indication that Ms. Whittington was unwilling to apply the correct law as the court advised her. The entire voir dire of Whittington, reviewed as a whole, does not show that the trial court abused its discretion in denying the defendant's challenge for cause.

Juror Blanche
When the state asked Eric Blanche if he would be able to vote guilty if the state did not produce or establish the weapon used in the crime, Blanche stated he could not vote guilty. He repeatedly stated that he was firm on that position. Blanche further stated that he had been jailed for six months for fighting, and that he had no friends who are police. The state challenged Blanche for cause. After evaluating the entirety of Blanche's responses, the trial court granted the challenge for cause.
If the examination discloses facts from which bias or prejudice may be reasonably inferred, the juror may be excused for cause. State v. Davis, 626 So.2d 800 (La.App. 2d Cir.1993), writ denied, 93-2945 (La.2/25/94), 632 So.2d 762. The trial judge, who had the benefit of personally observing Blanche as he responded to questions, found that his answers rose to the level of a valid challenge for cause. Reviewing the voir dire as a whole, we cannot find that the trial court abused its discretion in granting the state's challenge for cause.

Juror Jackson
The state challenged Irma Jackson on the grounds that she repeatedly stated that she would require the state to prove its case by 100 percent, could not vote guilty if the defendant did not tell his side of the story, and would require the state to identify the type of murder weapon before she could convict. The state also challenged Jackson on the basis of an anti-police bias, including her brother's incarceration for armed robbery at Wade Correctional Center, the same facility as Everett English; a close friend's incarceration for homicide; and two arrests of her own. She stated she was not happy with the way the police had handled matters for her. The trial court found that Jackson's inability to follow the law and her bias toward the police supported granting the state's challenge for cause.
The trial court did not abuse its discretion in that Ms. Jackson repeatedly indicated that she was not willing to follow the law and had a possible bias.

Juror Roberts
The state challenged John Roberts on the basis of a strong anti-police bias. He had had several contacts with the police, including at least three arrests. Roberts stated he had been stopped by the police over allegations that he was operating a meth lab. Roberts asserted the allegations had been false, and described having a low opinion of certain police departments and individual officers who would be testifying at the trial. Reviewing the voir dire as a whole, it cannot be said the trial court abused its discretion in granting the state's challenge for cause.
The two assignments of error pertaining to juror challenges are without merit.

*351 JURY INSTRUCTIONS
In three assignments of error, the defendant complains of the trial court's refusal to give jury instructions he requested.

Manslaughter Instruction
The defense proposed the following jury instruction defining manslaughter:
Manslaughter is defined in Louisiana Revised Statutes 14:31 as follows:
A. Manslaughter is:
....
(2) A homicide committed, without any intent to cause death or great bodily harm
(a) When the offender is engaged in the perpetration or attempted perpetration of simple burglary, theft or illegal possession of stolen things.
The trial court denied this proposed charge, which incorrectly stated the law. Instead, it kept the standard charge which tracks the language of La. R.S. 14:31:
Manslaughter is defined in Louisiana Revised Statutes 14:31 as follows:
A. Manslaughter is:
....
(2) A homicide committed, without any intent to cause death or great bodily harm
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person.
The proposed instruction misstates the law, providing for a manslaughter conviction, without any intent to kill or cause great bodily harm, only if the defendant was engaged in one of three offenses: simple burglary, theft or illegal possession of stolen things. This clearly is not provided for in La. R.S. 14:31. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La. C. Cr. P. art. 807. A trial court in a murder prosecution does not err in denying special charges requested by the defendant where such charges are either covered by a general charge or are not wholly correct and pertinent. State v. Nelson, 354 So.2d 546 (La.1978); State v. Cooks, 36,613 (La.App.2d Cir.12/4/02), 833 So.2d 1034. The trial court's refusal to read the misstatement of law as to the definition of manslaughter was not error.
This assignment of error is therefore without merit.

Deliberations and Lenity Instructions
The defendant's proposed jury instructions Nos. 9 and 10 read as follows:
9. Order of deliberations (suggested addition)
The jury may consider the various charges in any order it chooses. The jury need not unanimously find Mr. Divers "not guilty" of a greater charge before finding him "guilty" on a lesser charger. For example, the jury does not need to unanimously find Mr. Divers "not guilty" of second degree murder before finding him "guilty" of a lesser offense such as manslaughter.
10. On lenity (suggested addition)
Under Louisiana Law, even if you should find the defendant guilty of second degree murder beyond all reasonable doubt, you the jury are entitled to return a verdict of manslaughter or other lesser verdict.
You the jury have the absolute prerogative to return a responsive verdict regardless of the amount of evidence. This authority is often called the *352 "jury's power of nullification" or the "essential principle of jury lenity."
Jury nullification is a recognized practice which allows the jury to disregard uncontradicted evidence and instructions by the trial judge. State v. Porter, 93-1106 (La.7/5/94), 639 So.2d 1137. The defendant has cited no authority to support the argument that the jury should have been instructed that it was free to disregard the law.
A review of the jury instructions given shows that the trial court gave detailed, correct instructions to the jury as to the general law. This included instructions that "... you jurors alone shall determine the weight and credibility of the evidence as well as the credibility of the witnesses as you are impressed with their truthfulness or lack of truthfulness." The jury was also admonished, "It is your duty to accept the law as given to you by the Court; however, the duty is yours and yours alone to apply the law to the evidence and to the facts you have found as it relates to the guilt or innocence of the accused in this case." The trial court further instructed, "You are not to be influenced by sympathy, passion, prejudice or public opinion. You are expected to reach a just verdict based solely on the evidence, or lack of evidence, of this particular case."
Failure to give a special charge to the jury constitutes reversible error only when there is a miscarriage of justice, prejudice to substantial rights of the defendant or a violation of a constitutional or statutory right. State v. Edwards, 25,963 (La.App.2d Cir.5/4/94), 637 So.2d 600. The defendant has failed to show how the trial court's refusal to instruct the jury to disregard the law and the evidence constituted a miscarriage of justice, prejudiced the substantial rights of the defendant, or violated a constitutional or statutory right.
This assignment of error is therefore without merit.

Accomplice and Snitch Testimony Instruction
The defendant submitted proposed jury instructions Nos. 6 & 7, which read:
6. Testimony of Jailhouse Informants (suggested addition)
The law looks with suspicion and distrust on the testimony of an alleged informant. Even in the absence of any proof of a leniency/immunity agreement, a jailhouse informant is the sort of witness whose testimony ought generally be viewed with significant caution.
You should, therefore, weigh the testimony from Donald Jack Elledge with great caution, and look upon it with suspicion and distrust.
Factors that weigh on the credibility of the witness include, but are not limited to, whether the witness has an incentive to testify or an interest in currying favor, and the criminal history of the witness, including whether the witness has committed crimes of dishonesty.
7. Accomplice's Testimony (suggested addition)
An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another person in the commission of a crime, regardless of his/her degree of participation.
The testimony of an alleged accomplice should be received with caution and scrutinized with care.
The trial court's denial of the defendant's requested jury instructions was not an abuse of discretion. Such "great caution" instructions are required when a case involves uncorroborated accomplice testimony. However, such instructions are not mandatory where an *353 accomplice's or snitch's testimony is materially corroborated. State v. Castleberry, XXXX-XXXX (La.4/13/99), 758 So.2d 749, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). Testimony is materially corroborated "if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation." State v. Schaffner, 398 So.2d 1032, 1035 (La.1981); State v. Castleberry, supra.
In the present case, the testimony of both Elledge and English was corroborated by the evidence presented at trial. The trial court did instruct the jury that it alone would determine the credibility of the witnesses' testimony, and:
In considering the credibility of the witnesses, you may take into account the manner or demeanor of the witness on the stand, the probability of his or her statement, the interest he or she may have in the case and every other circumstance surrounding the giving of his or her testimony which may aid you in weighing his or her statements.
....
[Y]ou as jurors have the right to accept as true, or reject as untrue, the testimony of any witness.
A requested special charge need not be given if it is included in the general charge. La. C. Cr. P. art. 807; State v. Cooks, supra. The defendant has failed to show how the trial court's instructions to the jury as to its authority to determine the credibility of the witnesses and to weigh the evidence prejudiced the defendant's substantial rights or violated a constitutional right.
This assignment of error is without merit.

NON-UNANIMOUS VERDICT
The defendant argues that, since he was convicted by a non-unanimous vote of ten to two, his rights under the federal and state constitutions were violated.
La. C. Cr. P. art. 782 provides, in relevant part: "Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." Second degree murder is punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1.
Non-unanimous jury verdicts for twelve person juries are not unconstitutional. State v. Wright, 332 So.2d 240 (La.1976); State v. Edwards, 420 So.2d 663 (La.1982). See also Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); State v. Hodges, 349 So.2d 250 (La.1977), cert. denied, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978).
The defendant's conviction for second degree murder by a vote of ten to two was permissible and constitutionally sound.
This assignment of error is meritless.

CRIME STOPPER'S TIP
In two assignments of error, Divers asserts that the trial court erred in refusing to allow defense counsel to interview and call as a witness a crime stopper's tipster.[6] This person claimed to have overheard a white man, who called himself "Merle," boasting in Tobe's Lounge on the evening of April 11, 1988, that he had killed two African-Americans. (The record *354 suggests that the tipster was a woman.)
Generally the identity of an informant is privileged and may be withheld. La. C.E. art. 514(A). The party seeking to overcome the privilege must clearly demonstrate that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer's testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence. La. C.E. art. 514(C)(3). To gain disclosure of the identity of an informer, the defendant bears the burden of demonstrating exceptional circumstances pertaining to his defense, and the trial court is accorded great discretion in making such a determination. State v. James, 396 So.2d 1281 (La.1981).
La. R.S. 15:477.1 provides that statements reporting alleged criminal activity to a "crime stoppers organization" are privileged communications not subject to disclosure. However, a criminal defendant may petition the court for an in camera inspection of the records of a privileged communication to determine whether "such records would provide evidence favorable to the defendant and relevant to the issue of guilt or punishment." La. R.S. 15:477.1(C). This test is a broader exception than the one created in La. C.E. art. 514. See Comment (c), La. C.E. art. 514. If the court determines entitlement to all or any part of such records, it may order production and disclosure as it deems appropriate. La. R.S. 15:477.1(C).
The confidentiality requirement of the crime stopper's privilege ensures anonymity for the tipster. Certainly, were tipsters to be revealed or readily made available to the defense, such informants would be discouraged from calling in information. Although the tipster's name was inadvertently disclosed, the judge correctly insulated the tipster from being contacted by the defendant or his lawyer.
Prior to ruling on this matter, the trial judge made the proper inquiry. During the course of several hearings and in camera inspections on this matter, the trial court found no information favorable to the defendant and relevant to the issue of guilt or punishment that could be beneficial to the defendant to the extent of requiring the disclosure of the confidential informant, least of which was the fact that the tip proved to be wrong. Shortly after the tip, English voluntarily confessed to the police that he and the defendant committed the crime. The tipster was not present at the crime, nor did the tipster have any relevant, admissible evidence. Failure of a trial court to produce to the defendant information as to an informant is not reversible error if the tips would not have produced a different result, and therefore were not material. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473.
Additionally, the tipster's statements, if used at trial, would have been offered to prove the truth of the matter asserted; i.e., an unidentified older white male, not the defendant and English, killed the two black men, and then bragged about it in a bar.[7] This would constitute hearsay evidence. La. C.E. art. 801(C). A statement against interest tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. La. C.E. art. *355 804(B)(3). We note that the physical evidence presented at trial corroborated English's confession that he and Divers participated in the murders, not that they were committed by an unknown white man. There is no showing that the statement heard by the tipster would have been admissible if the defendant had been allowed to call her to testify at trial.
These assignments of error are without merit.

ILLEGAL ARREST
The defendant claims that he was illegally arrested and that it was error for the trial court to admit his statements and physical evidence stemming from that arrest.
The defendant was initially arrested at Sharon Felder's apartment in Dallas, Texas. Two Dallas police officers and two Louisiana detectives came to the apartment complex, looking for the defendant due to his connection to the stolen car of one of the murder victims. The police entered the apartment without a warrant because the frightened apartment manager, who had not seen Ms. Felder recently, expressed great concern for Ms. Felder's safety and requested that the officers enter the apartment to search for her. The police searched for Ms. Felder or her body; instead they found the defendant hiding in a closet. No weapons were found, and no evidence was seized at the apartment. The defendant asked for a red jacket; it was later identified as resembling one owned by Vandervield. The tennis shoes he was wearing at the time of his arrest were seized; they were later found to be compatible with the footprint in Vandervield's carport. Several days later, the Dallas police returned to the apartment and received a consent to search from the defendant's girlfriend. At that time the police seized several items, including a gold Wittnauer watch which was later identified as belonging to Stevenson. The defendant was properly Mirandized before each statement.
The defendant's sole argument of this assignment of error was briefed in two paragraphs:
Mr. Divers's arrest was unlawful as the arresting officers had neither probable cause for the arrest nor exigent circumstances, both of which are prerequisites to circumventing the constitutionally mandated requirement of a warrant. Payton v. New York, 445 U.S. [573,] 589[, 100 S.Ct. 1371, 63 L.Ed.2d 639] (1980). As the arrest was unlawful under the U.S. and Louisiana constitutions, the evidence obtained in connection therewith  including all statements made by Mr. Divers at the scene along with all physical evidence recovered from the scene, such as the birth certificate and the jacket and any reference thereto  should have been excluded.
This issue was raised and denied prior to the first trial, R1. 156-159 (motion), R1. 1377-79 (ruling), and was raised and pretermitted on direct appeal. See Mr. Divers's first direct appeal brief for a fuller exposition of this argument.
While we note that a mere restatement of an assignment of error in a brief does not constitute briefing of the assignment,[8] we will succinctly respond to the defendant's claim of error. The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. State v. White, 399 So.2d 172 *356 (La.1981); State v. Johnson, 407 So.2d 673 (La.1981). Given the grave and immediate concerns that Ms. Felder was in imminent peril, the police had exigent circumstances to enter her apartment, at the request of her apartment manager, and to search for her without a warrant.
This assignment of error is therefore without merit.

FARETTA RIGHTS/SPEEDY TRIAL VIOLATIONS
In two assignments of error, the defendant contends that the trial court erroneously denied his Faretta[9] rights to represent himself in his first trial and that this refusal somehow led to his counsel waiving his speedy trial rights in his second trial. He argues that the trial court erred in denying his motion to quash the indictment for failure to timely prosecute.

Right to Self-representation
The issue of the trial court, during the defendant's first trial, allegedly erring in refusing to allow the defendant to discharge his counsel, Wilson Rambo, and represent himself, is now moot. Following the first trial, Rambo was relieved as the defendant's counsel, and Neal Walker was appointed by the Louisiana Supreme Court to represent the defendant on appeal. The defendant's first conviction was later reversed, and a new trial was ordered.[10] The defendant did not seek to represent himself in the second trial. Walker, his lead counsel, was seriously injured when he was struck by a car in March 1997. In November 1997, "stand-in" counsel Denise LeBoeuf requested on Divers' behalf  and in his presence  that the trial court appoint Rambo as co-counsel for the second trial; the request was granted. The defendant appeared in court with Rambo on various occasions and never protested his appointment.

Speedy Trial
Next, the defendant argues La. C. Cr. P. art. 582 provided him the right to a retrial within one year of the reversal of his first conviction. The defendant argues this right was violated on August 11, 1997, when, Rambo, his counsel from his first trial, made an appearance on behalf of his present counsel, Walker, waived the defendant's presence, and signed a joint continuance for the defendant on Walker's behalf. The joint motion requested that trial be reset for September 29, 1997, and expressly waived the running of all applicable prescription periods on the defendant's behalf.
Rambo appeared in several other requests for continuances, all without objection by the defendant. On April 24, 1998, the defendant filed a motion to quash, asserting that the retrial was not tried within the one-year time limitation of La. C. Cr. P. art. 582. At the hearing on the motion, evidence established that after the new trial was ordered, the serious injuries sustained by the defendant's counsel, Walker, restricted his ability to attend court or prepare for trial. On August 4, 1997, another local counsel "stood in" for the defendant's trial counsel and had the matter passed to August 11, 1997. On August 11, 1997, Rambo "stood in" for Walker and signed the previously mentioned joint motion to continue the matter. The joint motion was prepared with Walker's name. The testimony at the hearing *357 also established that Walker was aware that the joint motion contained the waiver language and that Rambo had signed it for him.
The defendant waited until after Rambo had made numerous other appearances on his behalf and had been appointed co-counsel before objecting to Rambo standing in on his behalf. The trial court denied the defendant's motion to quash. In an unpublished opinion, we denied the defendant's writ application, agreeing with the trial court that Rambo acted on the defendant's behalf in moving for the continuances. State v. Divers, 32,295 (La.App.2d Cir.2/4/99). The supreme court also denied the defendant's writ application, 99-0512 (La.4/1/99), 742 So.2d 874.
We find that the record supports the trial court's findings that Rambo acted on the defendant's behalf when he moved for continuances of trial. This includes the continuance motion containing the waiver of all prescriptive periods. State v. Corley, 97-235 (La.App. 3d Cir.10/8/97), 703 So.2d 653, writ denied, 1997-2845 (La.3/13/98), 712 So.2d 875; State v. Harris, 29,574 (La.App.2d Cir.5/7/97), 694 So.2d 626.
This assignment of error is therefore without merit.

MOTIONS TO RECUSE
In two assignments of error, Divers contends that the trial court erred in denying his motion to recuse the entire district attorney's office and his motion to recuse ADA Madeline Slaughter.

Recusal of DA's Office
In this assignment of error, the defendant argues that the entire district attorney's office should be recused because three assistant district attorneys on staff while the second trial was being litigated were counsel of record for the defendant at some point. These assistants were Diehlmann Bernhardt, Arthur Gilmore, Jr., and Robert Stephen Tew.
La. C. Cr. P. Art. 680 provides:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
In an action to recuse the district attorney, the defendant has the burden of showing, by a preponderance of the evidence, that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Edwards, 420 So.2d 663 (La.1982); State v. Crandell, 604 So.2d 123 (La.App. 2d Cir.1992). The mere fact that an assistant district attorney previously represented a defendant in the same criminal matter does not ipso facto require the district attorney and other members of his staff to be recused. State v. Crandell, supra; State v. Brown, 274 So.2d 381 (La.1973). The law presumes that the attorney will respect a client's confidences, and where counsel is not called upon to use against a former client any confidential knowledge gained through their former association, the accused suffers no prejudice. State v. Brazile, 231 La. 90, 90 So.2d 789 (1956); State v. Crandell, supra. The courts have consistently refused to recuse the district attorney and the rest of his staff when an assistant district attorney formerly represented *358 the defendant. See State v. Crandell, supra, and cases cited therein.
The record provides no basis for finding that the trial court erred in its ruling. Nothing in the record shows that these assistant district attorneys had any involvement in the prosecution of this case.
This assignment of error is without merit.

Recusal of ADA Slaughter
The defendant filed a motion to recuse the lead ADA, Madeline Slaughter, based on her alleged involvement with the testimony of Joel Thompkins. He was Divers' Dallas cellmate who testified at the first trial that Divers admitted to him that he had committed the murders. Between the first trial and the second trial, Thompkins told defense counsel that he had lied about the defendant's admission and asserted that he had been coached by the detectives and the district attorney to lie.
We note that the proper procedural vehicle in which to request removal of an assistant district attorney from prosecuting a case is a motion to disqualify. State v. Bourque, 622 So.2d 198 (La.1993), overruled on other grounds by State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16. Recusation is a proceeding which is, by the nature of the procedures followed, not applicable to the assistant district attorney. Comment (a), La. C. Cr. P. Art. 680.
The trial court found no merit in the motion and denied it after an extensive hearing on the matter. There is no showing how the trial court abused its discretion in so ruling. The defendant's claim is further weakened by the fact that the state did not call Thompkins as a witness in the second trial. The defendant has failed to show how he suffered any prejudice by ADA Slaughter trying the second trial.
This assignment of error is without merit.

EXCESSIVE SENTENCES
The defendant contends that the trial court erred in imposing his life sentences to be served consecutively instead of concurrently.
La. C. Cr. P. art. 883 provides that when two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Mack, 37,174 (La.App.2d Cir.6/27/03), 850 So.2d 1035, writ denied, 2003-2122 (La.1/16/04), 864 So.2d 628.
If the court chooses consecutive sentences, it must state the factors considered and the reasons for the consecutive terms. State v. Wilson, 28,403 (La.App.2d Cir.8/21/96), 679 So.2d 963. Relevant factors include the defendant's criminal history, the gravity or dangerousness of the offenses, the viciousness of the crimes, the harm done to the victims, and whether the defendant poses an unusual risk of danger to the public. State v. Wilson, supra; State v. Willis, 36,198 (La.App.2d Cir.8/14/02), 823 So.2d 1072, writ denied, XXXX-XXXX (La.4/8/04), 870 So.2d 262.
At Divers' sentencing, the trial court stated that it was ordering consecutive sentences because of the "especially cruel and vicious nature of these crimes." It also noted Divers' lack of any remorse and the "real possibility of more violence" by this defendant.
Both victims were shot in the head while tied up and helpless to protect themselves. *359 Stevenson did not die for several hours; according to the coroner, it is unlikely that Vandervield died instantly from his wound. The victims were then dumped in a rural setting where they were virtually certain to die without medical assistance. Additionally, both had facial lacerations which were indicative of blows to the head. A main objective in the murders was robbery; several items were stolen from Vandervield's house and the automobiles of both victims were taken. As noted by the trial court, the record is completely devoid of any indication of remorse by Divers. After a careful review of the record, we find that the trial judge adequately supported the imposition of consecutive sentences under La. C. Cr. P. art. 883.
This assignment of error lacks merit.

CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The defendant's cousin, Everett English, was convicted of two counts of manslaughter and sentenced to consecutive sentences of 21 years at hard labor. State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1172 (La.1991).
[2] In 2003, testing revealed Divers' DNA on this cigarette butt.
[3] Another cellmate, Joel B. Thompkins, did not testify in the second trial. At the first trial, he testified that Divers, while they were housed together in the Dallas jail, admitted killing the victims.
[4] The state contends that the terms of its agreement with the defense to reduce the charges from first degree to second degree murder precluded appellate review of some of these assignments of error. However, we do not interpret the agreement as containing a waiver of the defendant's right to appeal all prior rulings. Consequently, we will review all of the defendant's assignments of error.
[5] On remand, the mother was again convicted of manslaughter. State v. Van Winkle, 97-307 (La.App. 5th Cir.10/28/97), 701 So.2d 1076, writs denied, XXXX-XXXX (La.3/13/98), 712 So.2d 876, and XXXX-XXXX (La.3/13/98), 713 So.2d 475.
[6] Due to the inadvertent conduct of a summer intern, the defense actually has the name of the informant. However, since the information was accidentally obtained from a sealed exhibit, defense counsel refrained from contacting the informant and unsuccessfully sought permission from the trial court to approach the informant before the second trial.
[7] In a prior writ disposition on this matter, this court noted that, according to the crime stopper's report, the tipster did not know the identity or whereabouts of the man.
[8] State v. Toney, 26,711 (La.App.2d Cir.3/1/95), 651 So.2d 387; State v. Williams, 632 So.2d 351 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139.
[9] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)
[10] The opinion reversing the conviction was issued on September 5, 1996. The state's application for rehearing was denied on October 11, 1996, at which point the defendant's conviction became final under La.C.Cr.P. Art. 922.